NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
**GIBBON FARQUHARSON**                          :
:   Civil Action No.  05-cv-2041 (PGS)
Plaintiff,                  :
:
v.                                              :
:
**POLICE OFFICER LOUIS PACELLI**                :
**and POLICE OFFICER TIMOTHY**                  :
**TABOR**                                       :   OPINION
:
Defendants.                  :
_____:

**SHERIDAN,  U.S.D.J.**

Plaintiff, Gibbon Farquharson, arrested for his role in a drug transaction, was allegedly beaten, kicked, and pepper sprayed, amounting to what plaintiff claims was excessive force. Plaintiff brought a §1983 claim and defendant detectives, Police Officers Louis Pacelli and Timothy Tabor, herein move for summary judgment on the grounds that their conduct was objectively reasonable and that they are entitled to qualified immunity. Plaintiff has cross-moved for summary judgment on the issue of liability. For the reasons stated herein, both motions are denied.

I.

In opposition to the defendants' motion for summary judgment and in support of plaintiff's cross-motion for summary judgment on liability, plaintiff merely relies on a three-page Declaration. The plaintiff did not file a Rule 56.1 statement in accordance with the Local Civil Rules, nor did plaintiff file a response to the defendants' Rule 56.1 statement as required by the Order of the Honorable Jose L. Linares, U.S.D.J., entered on May 10, 2006. Where a litigant fails to file the

necessary Rule 56.1 statement, the Court will draw the facts from available sources including the pleadings and discovery materials. L.Civ.R. 56.1, comment 2; see also *Jordan v. Allgroup Wheaton*, 218 F.Supp.2d 643, 646 (D.N.J. 2002), aff'd 95 Fed. Appx. 462 (3d Cir. 2004); *Colida v. Sharp Electronics*, 2004 U.S. Dist. LEXIS 27428 (D.N.J. 2004), aff'd 125 Fed. Appx. 993 (Fed. Cir.), cert. den. 544 U.S. 1057, 125 S. Ct. 2974 (2005).

II.

As set forth in the police reports, attached to defendants' motion papers, on February 16, 2003, at approximately 12:32 a.m., the defendant detectives, in plain clothes and operating an unmarked vehicle, observed the plaintiff approach the drivers side of another vehicle. The driver of the vehicle handed the plaintiff money, at which time the defendant detectives pulled their car up next to the other vehicle. The defendants observed the plaintiff handing a small blue baggie to the driver. The defendants exited their vehicle with badges displayed around their necks and ordered the plaintiff and driver to stop. The driver stopped, however the plaintiff allegedly attempted to flee the scene.[1] The defendant detective pursued the plaintiff and attempted to apprehend him. According to police reports, the plaintiff began screaming and acting in a violent manner, causing the detectives to "tackle [the plaintiff] to the ground and wrestle [the plaintiff] into handcuffs." According to the plaintiff, the defendants "savagely beat me, kicked me and repeatedly pepper sprayed me during the course of effecting an arrest." After the plaintiff was subdued, the detectives then retrieved the blue bag which contained a small, white, rocklike substance suspected by the detectives to be crack cocaine. The plaintiff was transported to police headquarters by another unit.

---

[1] At oral argument, plaintiff disputed this fact, maintaining that he never attempted to flee the scene.

Upon entering police headquarters, Sergeant Oswald allegedly observed the plaintiff chewing on a blue object. When plaintiff refused to tell the officers what he was chewing on, Sergeant Oswald attempted to retrieve the item by holding the plaintiff's nose. The plaintiff allegedly fell to the floor as Sergeant Oswald continued to hold the plaintiff's nose and ordered the plaintiff to spit the object out. Defendants believed the plaintiff swallowed the object.[2]

The plaintiff was then brought to the defendant detectives' office where they began gathering information and taking plaintiff's property. At this time, it is again alleged that defendants observed plaintiff chewing on an object, that appeared to Defendant Detective Pacelli to be a small blue baggie and a larger clear baggie. When ordered to spit the object out, defendants allege that plaintiff covered his mouth and attempted to force the object down his throat with his finger. Defendants claim that they attempted to subdue the plaintiff, at which time the plaintiff again began to violently struggle. The police reports further indicate that the two defendants, along with another officer, allegedly "struggled" with the plaintiff when Defendant Detective Pacelli sprayed the plaintiff with one short spray of "O.C." (Oleoresin Capsicum), or pepper spray, which subdued the plaintiff. The plaintiff was placed in handcuffs and, allegedly, remnants of a blue baggie and clear baggie were spit out.

In light of the belief that the plaintiff had swallowed an unknown amount of narcotics, the plaintiff was transported to Barnert Hospital, in Paterson, New Jersey, where he was treated for cocaine abuse and hypertension. Hospital records indicate that the hospital gave the plaintiff activated charcoal and prescribed Clonidine. The records also noted swelling and erythema (redness) to the right side of plaintiff's face, abrasions on plaintiff's left and right knuckles, tenderness to the

---

[2] While plaintiff's opposition/cross-motion suggests that he was assaulted by Sergeant Oswald at police headquarters, plaintiff has not named Sergeant Oswald as a defendant in this matter.

upper quadrant, and dark red blood in plaintiff's mouth.

III.

Plaintiff filed this action against the defendant detectives alleging excessive force and seeking relief under 42 U.S.C. §1983. Section 1983 of Title 42 subjects to liability:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"*Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To establish a viable §1983 claim, a plaintiff must demonstrate that "the conduct complained of was committed by a person acting under color of state law" and that the "conduct deprived the plaintiff of his rights, privileges and immunities secured by the Constitution or laws of the United States." *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)).

"In addressing an excessive force claim brought under §1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386 (1989). Relevant to this inquiry is the status of the plaintiff at the time of the alleged violation. In *Graham*, the Supreme Court made explicit that the Fourth Amendment governs excessive force claims arising out of an arrest or investigatory stop. *Id.* at 395.

Under the Fourth Amendment, whether an officer used excessive force is assessed by the "objective reasonableness" of that officer's conduct. *Id.* at 397. Whether the force used to effectuate

an arrest is reasonable depends upon "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

Plaintiff claims excessive force was used by defendant detectives at the time of arrest and in the room where defendants were questioning plaintiff at police headquarters. The defendants concede that force was necessary to apprehend the fleeing suspect, requiring the defendants to tackle the plaintiff and wrestle him into handcuffs. Plaintiff's version of the events allege that he did not flee the scene and that he was beaten, kicked, and pepper sprayed without reason. In addition to these contradicting facts, the police report suggests that no pepper sprayed was used at that juncture. Defendants, however, admit using pepper spray during the second episode.

Defendants cite to *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999), for the proposition that "even though reasonableness traditionally is a question of fact for the jury, defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Id.* (citing *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). However, while the Third Circuit looked upon the Ninth Circuit's holding with approval, it followed with the question of "how willing should district courts be to find a use of force objectively reasonable assuming a given set of undisputed facts?" In answering its own question, the court responded: "To the extent that there is a general answer to this question, it depends on a court discerning differences in degree familiar in evaluating factual questions on summary judgment. As the Supreme Court said in *Anderson*, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." *Abraham*, 183 F.3d at 290 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

In this case, the factual discrepancies preclude summary judgment as genuine issues of material fact exist with regard to whether the plaintiff fled the scene and the amount of force used in effectuating the plaintiff's arrest. See *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3rd Cir.1995) (reversing summary judgment on excessive force claim where testimonies by plaintiff and officer differed) (citing *Frohmader v. Wayne*, 958 F.2d 1024, 1025-26 (10th Cir.1992)).

IV.

The defendant detectives further maintain that plaintiff's §1983 claim must fail because the defendants are entitled to qualified immunity. To determine whether a police officer may enjoy qualified immunity, a court must engage in a two-step analysis:

> First, the court must determine whether plaintiffs have established a constitutional claim. The court must then determine whether the officer's conduct was objectively reasonable given the legal rules clearly established at that time. Only when the contours of a right are sufficiently clear so that a reasonable officer would understand that his conduct violates that right will a right be considered clearly established.

*Malignaggi v. County of Gloucester*, 855 F.Supp. 74, 79 (D.N.J.1994).

Generally, the applicability of qualified immunity is a question of law. See *Sherwood v. Mulvihill*, 113 F.3d 396, 401 n. 4 (3d Cir.1997). However, where factual issues relevant to the determination of qualified immunity are in dispute, the Court cannot resolve the matter as a question of law. See *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir.1995). The Court has already determined that there is uncertainty regarding whether the plaintiff fled the scene and the amount of force that defendants used in arresting the plaintiff. Because these facts remain in dispute, the Court cannot determine as a matter of law whether defendants acted in an objectively reasonable way when they allegedly used force to arrest the plaintiff.

Therefore, both defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment on liability are denied.

October 6, 2006

S/ *Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.